# MARCH, 1938.

GERTRUDE K. DIXON, APPELLANT, v. THE TRAVELERS PROTECTIVE AS-
SOCIATION OF AMERICA, A CORPORATION, RESPONDENT.—213 S. W.
(2d) 1086.

St. Louis Court of Appeals. Opinion filed March 1, 1938.

*M. P. Phillips* for respondent.

128

*I. R. Goodman, Haynes Carter* and *Robert L. Aronson* for appellant.

SUTTON, C.—This is an action to recover five thousand dollars accident insurance on the life of Norman Volney Dixon.

The Travelers' Protective Association of America is a Missouri corporation, and is a fraternal beneficiary association. Norman Volney Dixon held a certificate certifying that he was a class A member of the association and entitled to such benefits as may be provided for class A members in the constitution and by-laws of the association, benefits in case of death being payable to Gertrude K. Dixon, his wife.

The by-laws of the association provide that whenever a class A member, in good standing, shall, through external, violent, and accidental means, under the limitations and provisions of the constitution, and amendments thereto, receive bodily injuries which shall independent of all other causes result in death, five thousand dollars shall be paid to the beneficiary of such class A member.

The constitution provides as follows: ·

"The Association shall not be liable in case of injury fatal or otherwise, resulting from any poison or infection (unless the infection is introduced into, by and through an open wound, which open wound must be caused by external, violent and accidental means, and be visible to the naked eye) or from anything accidentally or otherwise taken, administered, absorbed or inhaled."

The constitution also provides that the association shall not be liable in case of suicide by the member while sane or insane.

The evidence tends to show that the insured came to his death as the result of drinking carbolic acid from a bottle, believing that he was drinking a medicine known as sodium bromide, used to alleviate pain, or allay nervousness, or as a sedative to induce sleep.

The cause was tried to a jury. At the conclusion of the whole case the court gave an instruction in the nature of a demurrer to the evidence. The jury returned a verdict in obedience to such instruction, and judgment was given accordingly. Plaintiff appeals.

Plaintiff assigns error here upon the giving of defendant's instruction in the nature of a demurrer to the evidence. Defendant contends that the giving of this instruction is justified by the so-called poison provision of the constitution above set out. Plaintiff contends that insured's death, having resulted from the unintentional or accidental taking of carbolic acid in the belief that he was taking medicine, is not within this provision, and that recovery is therefore not barred by it.

This provision may be set out, for the sake of clarity, as follows:

"The association shall not be liable in case of injury fatal or otherwise, resulting from any poison . . . or from anything accidentally or otherwise taken, administered, absorbed or inhaled."

Plaintiff insists that the two clauses of this provision are independent of each other, and must be so read and understood, so that the decision of this case depends upon the meaning of the first clause unaffected by the second.

For the purpose of this case we may accept the plaintiff's view, and let the decision hang upon the first clause of the provision, that is, that "the association shall not be liable in case of injury fatal or otherwise, resulting from any poison." So that the question presented for solution is whether a death resulting from poison accidentally taken under the mistaken belief that it is a harmless medicine is a death "resulting from any poison."

It may be helpful just here to quote what was said by the court, speaking through Judge SANBORN, in McGlother v. Provident Mutual Accident Company, 89 Fed. 685, wherein the policy under construction provided that the insurance did not cover death "from poison," as follows:

"Is a death from poison accidentally taken under the mistaken be-

lief that it is a harmless medicine a death from poison? That is 'the real question in this case, and to ask it seems to answer it. If death from poison unconsciously taken under the belief that it is not poison is not a death from poison, what is it a death from? The whole is greater than any of its parts, and includes them all. Death from poison is greater than, and necessarily includes, death from poison taken in any particular way, because it includes death from poison taken in every way. It includes death from poison taken intentionally or unintentionally, consciously or unconsciously, voluntarily or involuntarily, with or without knowledge that the draught is dangerous, because every species of death from poison is included within the generic term.''

Plaintiff here relies on Dezell v. Fidelity & Casualty Company, 176 Mo. 253, l. c. 285, 75 S. W. 1102. In that case the policy insured against ''bodily injuries sustained through external, violent, and accidental means,'' and provided that ''this insurance does not cover . . . injury fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled.''

What was said in that case must, of course, be regarded in the light of its facts, which were stated by the court as follows:

''Upon the trial the plaintiff proved that the insured was not addicted to the use of morphine, and had only taken it two or three times in his life, under the advice of a doctor, to allay the pain of neuralgia. + That on Saturday and Sunday before his death he was suffering with neuralgia, and that on Sunday evening he had the prescription for neuralgia which his physician had given, refilled, and then took the medicine and went to bed. About midnight his wife went to his room to inquire about him and he said he felt some-better and told her to go to bed, which she did. About seven o'clock on Monday morning she went to his room again and found him unconscious, and he died about eleven o'clock on Monday morning. The doctor testified that he died from the effects of morphine.''

It was ruled that under these facts the death of the insured was not within the so-called poison provision of the policy.

It is essential to a proper understanding of the ruling of the court in that case to consider the cases cited and relied on by the court in support of its ruling, as follows: [Renn v. Supreme Lodge K. of P., 83 Mo. App. 442; Aetna Life Ins. Co. v. Davey, 123 U. S. 739; Higbee v. Guardian Mutual Life Ins. Co., 66 Barb. 462.]

In the Renn case the policy provided that it should be void if the death of the insured was caused or superinduced by ''the use of narcotics or opiates.'' The evidence showed that the insured died from an overdose of morphine taken under the advice of a physician to ally pain and induce sleep. It was held that the exception from the coverage of the policy of death caused or superinduced by ''the

use of narcotics or opiates'' meant the use of narcotics or opiates as a habit and for the purpose of obtaining the narcotic and stimulating effects of the drug, and not the use of narcotics or opiates as a medicine under the advice of a physician. To the same effect are the Davey case and the Higbee case.

The ruling in the Dezell case was obviously inspired by these three cases, for the court, after quoting and discussing these cases at length, concludes as follows:

''The better reason supports the rule that such exceptions in such policies do not cover medicine (even though it contain poison) or anything taken or administered in good faith to alleviate physical pain, even though it results in unexpected and unintentional death.''

The court in the Dezell case also cites the McGlother case, from which we have already quoted, but does not disapprove it. On the contrary, we think the McGlother case has the approval of the court in the Dezell case, for the court, in the Renn case which the court in the Dezell case quotes with evident approval, expressly distinguishes the McGlother case from the Renn case. But, however this may be, it is too plain for argument that there is a wide and essential difference between the language of the exception in the present case and the language of the exception in the Renn case.

The court in the Dezell case also cites, but does not discuss, Omberg v. United States Mutual Accident Company, 101 Ky. 303, 40 S. W. 909. In that case it was held that death caused by blood poisoning superinduced by the bite or sting of an insect is not the result of ''poisoning in any form or manner or contact with poisonous substances,'' within the meaning of an accident policy. It was so held on the ground that death caused by blood poisoning superinduced by the bite or sting of an insect is not caused by ''poisoning or contact with poisonous substances'' in the ordinary and popular meaning of those terms. Of course, death resulting from the drinking of a poisonous liquid is very different from death caused by blood poisoning superinduced by the bite or sting of an insect. The one is ordinarily and popularly understood as death resulting from poison, while the other is not.

The court in the Dezell case also cites, but does not discuss, Healey v. Mutual Accident Association, 133 Ill. 556. In that case the policy insured against death by external, violent and accidental means, with an exception in case of death by ''the taking of poison.'' The insured came to his death by accidental swallowing an overdose or an excessive quantity of chloral. It was held that the insured came to his death ''through external, violent, and accidental means,'' within the meaning of the policy. The exception was not discussed.

In Travelers' Insurance Company v. Dunlap, 160 Ill. 642, relied on by plaintiff here, it was held that drinking carbolic acid by mistake for peppermint was not within the clause of an accident insur-

ance policy exempting the company from liability for death from "taking poison." It was held that the term, "taking poison," used without qualifying words, in common parlance and as popularly understood, means a voluntary or intentional, and not an accidental, taking of poison.

To the same effect is Metropolitan Accident Association, v. Froiland, 161 Ill. 30.

The decisions in both of these cases are based on the decision in Paul v. Travelers' Insurance Company, 112 N. Y. 472. In that case the policy provided that the insurance should not extend to death caused by "the taking of poison, contact with poisonous substances, or the inhaling of gas." The insured came to his death by unintentionally and unconsciously inhaling illuminating gas with which the atmosphere of his bedroom became saturated after he retired. It was contended by the company that the insured came to his death by "the inhaling of gas" within the meaning of the exception, and that the company was therefore not liable. It was held that the company in expressing its intention not to be liable for death caused by "the inhaling of gas" could only be understood to mean a voluntary and intelligent act and not an involuntary and unconscious act. But in so holding the court, speaking through GRAY, J., said:

"I agree with the counsel of the respondent in his suggestion, that if the exception is to cover all cases where death is caused by the presence of gas, there would be no reason for using the word 'inhale.' If the policy had said that it was not to extend to any death caused wholly or in part by gas, it would have expressed precisely what the appellant now says is meant by the present phrase, and there could have been no room for doubt or mistake."

In the present case the contract is worded just as the court in the Paul case says it should be worded, so that there could be no room for doubt or mistake as to its meaning, that is, that the association shall not be liable for death "resulting from any poison."

Obviously the ruling in the Dezell case is not bottomed on the doctrine of the Paul case and cases following it, but is bottomed on the fact, proved by the plaintiff and admitted by the defendant in its answer, that the insured "died from the result of a medicine commonly called morphine intentionally and knowingly taken by the insured without expecting or intending that the same should produce death."

The contention of plaintiff here that death resulting from the accidental or unintentional taking of poison is not death "resulting from poison," is forcefully and quite satisfactorily answered in the McGlother case, as follows:

"The parties to this contract had the undoubted right to make their own agreement; to contract that the indemnity provided by the policy should protect against some or all of the ills that flesh is heir

to. They had the right to make a contract that the company would protect the insured or his beneficiary against one or all of the accidents that might befall him. They made an agreement that the association would indemnify against all accidents except those expressly excluded by the terms of the policy. There was nothing illegal, immoral, or against public policy in the contract itself, or in the express agreement that certain accidents specified therein should be excluded from the promised indemnity; and there is no just reason why parties or courts should be ingenious or eager to add to, substract from, or to search out curious and hidden meanings in the plain terms of, their compact. Contracts of insurance are not made by or for casuists or sophists, and the obvious meaning by their plain terms to the business and professional men who make and use them must not be discarded for some curious and hidden interpretation that is to be reached only by a long train of acute and ingenious reasoning. 'Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and popular sense.' [Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452, 463, 14 Sup. Ct. 379; Fred J. Kiesel & Son v. Sun Ins. Office of London, 88 Fed. 243, 246.] In the language of the learned, and in the common parlance of the street, a death from poison unconsciously taken in the belief that it was a harmless drink is a death from poison. A statement, made in the ordinary affairs of life, that such a death was not from poison, would be universally recognized as false. In its plain, ordinary, and popular sense, 'death from poison' describes and includes a death from poison unconsciously and unintentionally taken under the mistaken belief that it is a harmless medicine; and it was undoubtedly in this sense that the parties to this contract used, and intended to use, it. To our minds the phrase is unambiguous and raises no doubt or question of its meaning; and our conclusion is that the death of the insured fell within the exception expressed in these words in the policy, and that the association is not liable for it, under its contract. [Cole v. Insurance Co., 61 Law T. (N. S.) 227; Early v. Insurance Co. (Mich.), 71 N. W. 500; Pollock v. Association, 102 Pa. St. 230; Batchelor v. Association, 34 Wkly. Law Bul. 239, 44 N. E. 1130; Nibl., Ben. Soc. & Acc. Ins., sec. 393; Cooke, Life Ins., sec. 56.]''

The rule that plain and unambiguous language, though found in an insurance contract, must be given its usual and natural meaning, is so well settled that citation of authorities announcing the rule would seem unnecessary. Nevertheless, see: Heald v. Aetna Life Ins. Co. (Mo.), 104 S. W. (2d) 379; State ex rel. Commonwealth Casualty Co. v. Cox (Mo.), 14 S. W. (2d) 600; State ex rel. Mutual Benefit, Health & Accident Ass'n v. Trimble (Mo.), 68 S. W. (2d) 685;

Taylor v. Loyal Protective Ins. Co. (Mo. App.), 194 S. W. 1055; Newbill v. Union Indemnity Co. (Mo. App.), 60 S. W. (2d) 658.

It follows that the instruction in the nature of a demurrer to the evidence was rightly given.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.