MEYER WIENER, Appellant, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a Corporation.—No. 38674.—179 S. W. (2d) 39.

Division One, March 6, 1944.

Rehearing Denied, April 3, 1944.

674

*Burnett, Stern & Liberman* for appellant.

*Jones, Hocker, Gladney & Grand* and *Lon O. Hocker* for respondent.

DOUGLAS, J.—This is an action by Dr. Wiener·to recover disability benefits under an insurance policy. The jury found for the insurance company. The judges of the St. Louis Court of Appeals were divided, so the case was transferred to this Court. 170 S. W. (2d) 174. We hear the case anew.

Dr. Wiener was an active medical practitioner for forty years and had become a recognized leader in his specialty, diseases of the eye. He had a large office practice where he examined, diagnosed, treated and advised patients. He had a large surgical practice. He regularly operated three afternoons a week besides performing emergency operations. He gave papers, addresses and lectures before numerous societies. He taught at the Washington University Medical

School during all his years of practice. He was frequently called in as a consultant by other doctors. On March 24, 1936 he sustained an attack of coronary occlusion, or thrombosis. He was confined to the hospital for seven weeks, then put to bed at home. By the end of May he was permitted to go downstairs. On his physician's advice he went to California for the summer where he led the life of a convalescent. He slowly became physically active again.

He has not engaged in the practice of medicine since his heart attack. But he has not been completely quiet professionally. He has given some lectures before learned societies and at medical schools. He finished and published a book on the surgery of the eye. He has done some experimental surgery on the eyes of animals. After Pearl Harbor, upon offering his services, he was made an honorary consultant to the Medical Department of the Navy and has rendered services as a consultant. He has been examined by a number of physicians and every one has advised him not to go back to practice because of the organic disease of his heart. He has followed their advice.

The insurance company sold Dr. Wiener a policy in 1919 in the face amount of $10,000 for an annual premium of $395.90. The company insured the doctor against total and permanent disability from bodily injury or disease which would permanently, continuously and wholly prevent him from performing any work for compensation, gain or profit, or from following any gainful occupation. If such occurred the company agreed to waive the further payment of premiums and to pay him one-tenth of the face amount, or $1,000 a year, during the continuance of his disability. The company reserved the right to demand ▇ proof once a year of the continuance of disability.

After his attack Dr. Wiener submitted his claim of disability to the company and it was allowed. It paid him the agreed amount yearly until the payment due on July 3, 1941, which it refused and also refused to continue waiving payment of premiums. Dr. Wiener then filed this suit.

▇ An appellate court will ordinarily determine a case on appeal on the same theory on which it was tried. The question presented is whether the parties tried the case on the theory the doctor had *never* been permanently or totally disabled or whether the doctor had been so disabled but had recovered. By every further reference merely to disability we mean total and permanent disability. The petition stated the doctor became disabled on March 24, 1936, and disability has continued since that date; that thereafter the company made annual payments to him until the one due on July 3, 1941, which it refused; and asked judgment for that payment and for a refund of the annual premium which the doctor paid. The answer alleged the doctor's claim of disability was originally "allowed by defendant" but the doctor "had recovered from his previous disability" prior to

July 3, 1941, and has not been disabled since that date. At the trial four doctors testified Dr. Wiener was disabled on July 3, 1941, or at the date of the trial. The effect of their testimony was his disability was continuous from the time of the attack. The doctor's instruction required the jury to find the original disability and its continuance through July 3, 1941, and thereafter, but this one requirement as to the original disability is not sufficient to establish a trial theory that the original disability was in question. Especially is this so in view of the company's instruction: "In this action plaintiff sues defendant claiming he has by such disease been disabled as above stated since July 3, 1940. Defendant denies that plaintiff has been so disabled since said time. Succinctly stated, the sole and only controversy here for your determination is whether continuously since said date of July 3, 1940, plaintiff is affected by disease, with total and permanent disability."

We find the fact of original disability was assumed by both parties. The sole issue pleaded, tried and submitted was whether the doctor had recovered from his original disability.

On cross examination of the doctor the company brought out for the first time in the case that he had sold his practice to his partner under an arrangement by which he received 50% of the net income from the practice for the year 1936 and 5% less each succeeding year. For 1936 he received about $30,000 and between $7,000 and $8,000 for the year preceding the trial. Objection was made not to the fact of the sale but to testimony about the proceeds received from the sale. The amount received from the sale was not relevant under the circumstances. It does not prove or disprove disability. It was prejudicial error to admit it.

The company also brought out on cross examination of the doctor that he was receiving disability payments from other insurance companies amounting to $13,750 a year. The admission of this testimony was likewise prejudicial error. The policy of insurance in suit was not against the doctor's need for money or loss of income. The doctor's financial status or the nature of the bargain he drove with his partner under the circumstances of this case were in no wise relevant to the issue of disability and were prejudicial. On the impropriety of such evidence see Erreca v. Western States Life Ins. Co., 19 Cal. (2d) 388, 121 Pac. (2d) 689, 141 A. L. R. 68; Comfort v. Travelers' Ins. Co. (Mo. App.), 131 S. W. (2d) 734; Pacific Mutual Life Ins. Co. v. Arnold, 262 Ky. 267, 90 S. W. (2d) 44; Equitable Life Assurance Society v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703.

The company argues the proceeds from the sale of his practice and from the insurance policies enabled the doctor "to quit and take it easy." After all, isn't that the purpose for having such insurance if a person becomes disabled? The company argues further that such

testimony was proper to show the doctor's motive for stopping work. It relies on recent federal cases where the courts held evidence about the amount of government compensation received by a plaintiff suing for disability benefits under a War Risk Insurance policy to be non-prejudicial.

In Jennings v. U. S., 73 F. (2d) 470, there is the statement that a defendant may bring out the motives why a claimant of disability benefits has not worked, for example—whether the failure to work was due to inability or the lack of a felt necessity. We do not regard this as a rule of general application because "each case presents its own setting, and no general rule (as to the admissibility of such evidence) can be laid down in advance." Rose v. U. S., 70 F. (2d) 68. Its admissibility "depends upon the fact issues and the situation developed by the evidence of each particular case." Cockrell v. U. S., 74 F. (2d) 151. This is so because "evidence of insured's wealth or his poverty, his income or his expenses, as such, is ordinarily of no materiality and may in some cases cause sympathy or prejudice to influence the verdict." U. S. v. Dudley, 64 F. (2d) 743. In the latter case the court found such evidence non-prejudicial because it was invited. The same was true in the Jennings case and in Prevette v. U. S., 68 F. (2d) 112 and Morrow v. U. S., 101 F. (2d) 654. Such evidence was held to be reversible error in Chrisman v. U. S., 61 F. (2d) 673, Rose v. U. S., 70 F. (2d) 68, supra, and U. S. v. Brundage, 136 F. (2d) 206.

 The company's main instruction is attacked as improperly stating the law. The part objected to read: "Plaintiff cannot be found by you to be so disabled if, in your opinion, he is able, with reasonable safety to his health and life, to exercise in any ordinary and usual way a substantial part of the ordinary functions and duties of his profession so as to enable him to make a reasonable living. A disability from disease which may have slowed him down in a general way from strenuously pursuing the practice of his profession in the concentrated and uninterrupted manner of his earlier years, or which would only hamper him in regularly performing the more delicate and difficult and exhausting operations of an outstanding surgeon-specialist, is not alone in one or both respects such a disability as is within the meaning of the policy, if from all the facts and circumstances in evidence you can find that he is able, notwithstanding his disability, and without probable injury to his health and life, to earn a reasonable livelihood by performing substantially all of the ordinary duties of his profession such as are ordinarily performed by a practitioner of his age."

The instruction is first attacked because it stated the doctor cannot be found disabled if he is able to exercise a substantial *part* of the duties of his profession. Further, that such statement contradicted the concluding sentence which, to establish disability, required a find-

ing that the doctor was unable to perform substantially *all* his duties. The instruction was not as clear as it might have been. However it did not technically misstate the rule of total disability. The rule as stated by this court is: "Total disability contemplated by an accident policy, or the disability clause of a life policy does not mean, as its literal interpretation would require, a state of absolute helplessness; rather, that the disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's, or, in many instances, any, business or occupation, in a customary and usual manner." Heald v. Aetna Life Ins. Co. of Hartford, Conn., 340 Mo. 1143, 104 S. W. (2d) 379, 1. c. 383. This is the prevailing rule. Anno. 98 A. L. R. 789. The Heald case disapproved the theory that a person is totally disabled only when he is "incapable from performing any substantial part of his ordinary duties." But that case dealt with a different type of disability insurance, insurance against disability from continuing in a designated occupation. There the court apparently indicated that inability to perform any one of the necessary duties required in following the designated occupation might totally disable a person from carrying on such occupation even though he could still perform a substantial part of the duties. The policy in the instant case covers disability from following any gainful occupation. Therefore, such theory properly applies here and is consistent with the general rule, which the Heald case approves, that a person is totally disabled when his infirmity prevents him from doing "all the substantial and material acts of his occupation." The word "all" in the general rule is used in the sense of the whole, meaning the sum total. However, it comprehends only those duties which are material and substantial. Incidental or occational acts are not included. But a provision in an insurance policy covering disability which prevents the insured from following any gainful occupation must be given a practical interpretation to serve the purpose of such insurance so that it becomes effective when a person is prevented by disability from successfully engaging in an occupation for which he is fitted.

Accordingly we hold a person is totally disabled when he cannot perform in the usual manner enough of the substantial and material duties of his occupation to be able successfully to continue his occupation or, in such a case as this, any gainful occupation for which he would be fitted.

Although the instruction was not subject to the objection above stated, still it was erroneous because there was no evidence to support the hypothesis the doctor could practice( but not strenuously) and could regularly perform difficult operations (although he might be hampered). This hypothesis introduced the theory of partial disability to negative total disability. But there was no evidence of the facts hypothesized on which to base such theory. The fact the doctor

stated on cross examination that he "was physically able to perform every function and operation of my profession, and mentally able, I think" is not sufficient to sustain the instruction as the doctor qualified this statement by adding that "the most tense and trying function of the profession is the responsibility involved." The meaning of such declaration was the doctor was physically able except for the heart condition.

The doctor testified the reason he did not resume his practice was because every physician with whom he had consulted had told him not to go back to practice. There was testimony at the trial his heart condition would not permit him to return to his work. There was no testimony to the contrary, the company putting on no evidence. We think the doctor was justified in not attempting to work although it seems to be the company's theory that before he could claim disability he must try and fail. The case of Prudential Ins. Co. v. Brookman, 167 Md. 616, 175 Atl. 638, is not applicable. It states that an insured is not relieved from making the effort of supporting himself unless the danger is imminent. The rule is recognized that an insured is disabled if he is not able to work without running the risk of increasing his disability or of shortening his life. Rezendes v. Prudential Ins. Co., 285 Mass. 505, 189 N. E. 826, a case involving a heart condition.

Furthermore, the instruction was erroneous because it was argumentative and misleading. The issue was not whether the doctor could "strenuously pursue the practice of his profession in the concentrated and uninterrupted manner of his earlier years." The issue was whether he was able after July 3, 1940 to pursue his practice in the customary and usual manner.

Because of the errors noted, the judgment must be reversed and the case remanded for new trial. However, we will dispose of the other points presented as they might arise on retrial.

The doctor argues since the company put on no defense there was no substantial evidence to support the verdict for the company and that the verdict was against the weight of the evidence.

Merely because the company offered no defense the jury did not have to find for the doctor. Whether the doctor was totally and permanently disabled within the meaning of the insurance policy was a question of fact for the jury. The burden of proof was on the doctor. "The jury . . . may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached." Cluck v. Abe, 328 Mo. 81, 40 S. W. (2d) 558. "Where a party asserts the affirmative of a proposition and proof of it is necessary to sustain his point, the truth and weight of his evidence, though uncontradicted, is for the jury." State ex rel. v. Cox, 325 Mo. 901, 30 S. W. (2d) 462. The doctor may not claim the verdict was against the weight of the evidence because a verdict for a de-

fendant in such a case as this, need not be supported by affirmative evidence, the burden being on the other party. See Bloch v. Kinder, 338 Mo. 1009, 93 S. W. (2d) 932.

The doctor had settled his claims for disability with the other insurance companies. By the settlement agreements the companies agreed to pay him for life 75% of the amounts called for by the policies. The agreements contained the following clause: "5. The Company agrees that the payments referred to hereunder shall continue notwithstanding any future change in the circumstances of either of the contracting parties hereto; and without limiting the generality of the foregoing, it is understood and agreed that Dr. Wiener may in the future engage in any occupation or business, and his doing so shall in no way affect the obligation of the Company to continue to make the payments provided for hereunder." This clause was proper evidence against the doctor. His reservation of the right to engage in any occupation or business in the future was an admission against his interest. On the other hand, after this clause was introduced against him the doctor would have the right to show the terms of the settlements if he desired to do so and to explain the circumstances under which they were made.

On cross examination the doctor's physician was asked whether he agreed with what was stated in an article on heart disease written by an admittedly high-ranking and outstanding doctor and published in the Journal of the American Medical Association. Of course the contents of the article may not be used as independent evidence but the use of the article on cross examination to test the witness' learning was legitimate. Cooper v. Atchison, T. & S. F. R. Co., 347 Mo. 555, 148 S. W. (2d) 773.

The judgment is reversed and the case remanded for new trial. All concur.