**226 A.2d 405.**

ANTHONY COLALUCA *vs.* MONARCH LIFE INSURANCE
COMPANY.

FEBRUARY 7, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an action of assumpsit arising out of
a disputed claim to monthly indemnity benefits provided

for in a policy of health and accident insurance. It was tried to a superior court justice sitting with a jury and resulted in a verdict for the defendant. The case is before us on the defendant's appeal from the judgment of the trial justice granting the plaintiff's motion for a new trial.

The record establishes that plaintiff was accepted as an assured on April 4, 1960 and sustained injuries in an automobile accident on December 4, 1960. Under the terms of the policy plaintiff would be entitled to monthly indemnity benefits of $550 during periods of total disability. The policy defined "Total Disability" as "means the complete inability of the Insured, as a result of such sickness or such injuries, to engage in his regular occupation * * *."

It is agreed, however, that the foregoing definition is not to be literally construed. Rather it is subject to the construction given by this court to similar language in *Pannone* v. *John Hancock Mutual Life Ins. Co.*, 52 R. I. 95, and *Cole* v. *Metropolitan Life Ins. Co.*, 54 R. I. 88.

In *Pannone* at page 100 this court stated, "Inability of the insured to do the greater portion, the substantial part, of his work or duty is total disability, but inability to do some one thing or several things constituting a lesser portion of his work is not total disability."

The policy in the instant case excludes the first week of disability and plaintiff made demands on defendant for monthly benefits commencing December 11, 1960.

The defendant denying liability, plaintiff commenced an action in assumpsit by writ dated May 3, 1961, hereafter referred to as the "first law action." By the terms of the policy, however, recovery could not be had for a period beyond the date of the writ and plaintiff commenced a second action by writ dated September 22, 1961 for disability from May 4, 1961 to the date of the second writ.

The cases were consolidated for trial before a superior court justice sitting with a jury which returned a verdict of $2,732 for plaintiff in the first case and a verdict for

defendant in the second case. No appeal was taken from the verdict for plaintiff.

In the second action, however, plaintiff moved for a new trial, which motion was granted, and from the judgment of the trial justice in that regard defendant seasonably prosecuted the instant appeal.

It appears that when plaintiff made application for the policy in question, he was the owner of United Plating Company which was devoted to a process in the manufacturing of jewelry in which he had some twenty-five years of experience. His regular employment then as it appears on the application was stated to be "Office." However in September 1960, he went to work for Michel Jewelry and under the terms of the policy it was his regular employment with this company against which any disability resulting from the injuries of December 4, 1960 must be tested. He classified his job with Michel as that of a "Supervisor" and on cross-examination stated that he had supervision of 60 to 80 employees.

It is clear from the arguments made by defendant that it considered plaintiff to have served Michel in an executive capacity; that such executive supervision constituted a substantial part of plaintiff's regular occupation; and that the case fell within the ruling of this court in *Pannone* v. *John Hancock Mutual Life Ins. Co., supra.* There the insured was the proprietor of a market and grocery store and though unable to help out as he might otherwise have done, he was able to manage his business which continued to prosper so that it could not be said that he was totally disabled within the meaning of the policy.

Here, however, plaintiff although referring to himself as a supervisor described his duties in some detail. They included, if believed, walking up and down three flights of stairs several times a day and repeatedly lifting boxes of castings and other materials which varied in weight from

thirty to one hundred pounds. This testimony was undisputed.

Doctor Charles P. Earley and Dr. Thomas L. Greason who attended plaintiff testified that during the period crucial to any recovery by him his physical condition remained such as to preclude him from carrying out the duties described by plaintiff, and even Dr. Thomas C. McOsker who examined plaintiff April 6, 1961 on behalf of defendant gave as his opinion that plaintiff should not lift such weights as the described duties entailed.

Doctor E. Arthur Catullo, an orthopedic surgeon, examined plaintiff February 14, 1961 at defendant's request. He testified that on the day of his examination plaintiff was partially incapacitated but capable of engaging in his regular employment. However both of defendant's medical witnesses referred to plaintiff as a "superintendent" and appear to have assumed that his regular employment was substantially executive in nature. Indeed, counsel for defendant asked Dr. McOsker the following question:

"Doctor, I would like you to assume that Mr. Colaluca's occupation at the time he was injured was that of a supervisor in a jewelry plant and that the evidence is that these duties as a supervisor involved the directing and guiding of other people in their various operations in the jewelry plant; now, on the basis of your examination, do you have an opinion, sir, as to whether at the time you saw him, Mr. Colaluca was able to carry on these supervisory activities?"

Answering affirmatively, the doctor was then asked to give his opinion and replied, "I felt that he could carry on such supervisory activities."

In passing on plaintiff's motion, however, the trial justice recognized that the determinative facts at issue were whether plaintiff's regular employment involved climbing up and down flights of stairs and lifting heavy objects and, if so, whether such duties constitute a substantial part of his regular employment.

He found that the evidence greatly preponderated against the verdict and failed to respond truly to the real merits of the case. His decision was the result of an independent exercise of his judgment based on a review of the evidence with particular reference to the salient facts. It is our well-established rule that in such circumstances the findings of the trial justice are entitled to great weight and his decision will not be disturbed unless it is clearly wrong or he has misconceived or overlooked material evidence. *Charpentier* v. *Potvin,* 90 R. I. 388; *Avedisian* v. *Gasparian,* 86 R. I. 423.

The defendant contends, however, that the trial justice both misconceived and overlooked material evidence and, additionally, was clearly wrong in that he failed to apply to the evidence the rule of law that he gave to the jury.

In granting plaintiff's motion the trial justice, reviewing and commenting on plaintiff's testimony as to the exact duties of his regular employment and making it clear that he believed such testimony, stated in his rescript that plaintiff's disability on May 3 was such as to prevent him from doing his regular work. This was the date of the first writ and a period of time not pertinent in the case under consideration. As heretofore related, plaintiff was injured December 4, 1960 and issued a writ May 3, 1961. This was the first law action and for disability there proved the jury returned a verdict for plaintiff. For disability continuing thereafter plaintiff issued a second writ September 22, 1961 and any recovery thereon would be from May 4, 1961.

We think it clear, however, from the whole record that the trial justice was fully aware of the applicable time period. Indeed he properly charged the jury in this regard and the reference in his rescript to May 3 rather than May 4 was an inadvertance rather than a misconception of the time period to be considered. See *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180.

Even so, defendant argues, the evidence was such that different minds could have reached different conclusions therefrom, and the trial justice, therefore, should not have disturbed the verdict, citing *Strigas* v. *Peloquin,* 99 R. I. 259, 207 A.2d 36, *King* v. *Skomorock,* 96 R. I. 204, *Kasegian* v. *Mottram,* 95 R. I. 183, and others to the same effect.

The cases relied upon by defendant certainly support the proposition for which they are cited, but in each such case, as well as in numerous others decided in this jurisdiction wherein the decision of the trial justice granting a new trial was held to be erroneous, the records disclosed that the trial justice either misconceived or overlooked material evidence or based his decision on evidence not in the record. In the instant case, however, it is our judgment the decision of the trial justice is not so invalidated.

All of the medical testimony including that of defendant's witnesses was to the effect that plaintiff was disabled to some extent and the conflict in the testimony was only as to the degree. The trial justice recognized this but also recognized that the duties which constituted plaintiff's regular employment, *at the time of this accident,* must be properly evaluated in weighing the medical testimony, and in reaching his decision he made it clear that as to this fact the evidence greatly preponderated against the verdict. We have resorted to the foregoing emphasis because in its oral argument and brief defendant refers to plaintiff's former employment, including the information contained on his application for the policy, as though these circumstances carried persuasive weight, whereas they are without significance.

In something of an extension of this argument, defendant points to Dr. McOsker's testimony regarding his examination of plaintiff April 6, 1961, at which time the doctor felt plaintiff was "going to complain for several more weeks." This testimony has significance for defendant because, as it argues, the verdict of the jury in the first law

action appears to have awarded indemnity benefits with interest to about the middle of April, thus indicating that the jury was impressed by the doctor's testimony. Assuming however that the jury based its verdicts in both cases on Dr. McOsker's testimony, defendant takes nothing thereby since as previously noted the doctor's opinion as to plaintiff's ability to perform a substantial portion of his regular employment was based on a questionable conception of what plaintiff's duties were and the trial justice believed that it was on this basic issue that the evidence preponderated against the verdict. See *King* v. *Skomorock, supra.*

Finally defendant contends that the trial justice's decision is clearly wrong for the reason that he failed to apply the rule relating to total disability as given by him in his instructions to the jury. His charge in pertinent part was as follows:

> "Disability is total if the insured can not perform any substantial part of the labor required in his occupation or, as the expression is used here, in his regular occupation; or, stated another way, total disability is present if the condition from which the plaintiff suffers prevents him from doing the substantial part of the ordinary duties required of him in his regular occupation; or if the insured, the plaintiff's physical condition is such that common care and prudence required that he cease all work."

In his rescript however the trial justice, passing on the question of total disability, used the following language: "Thus, it appears to the Court (1) that an essential part of the usual duties of plaintiff's employment at the time of this accident was the lifting of large containers of jewelry parts, the containers weighing 40 to 70 pounds each * * *." He concluded by finding that plaintiff proved by the great weight of the credible evidence that he was unable to do such work.

The defendant argues that an "essential part" is not the "greater portion, the substantial part" of plaintiff's regular

occupation citing *Pannone, supra*. There, as previously noted, the insured operated his own business and although unable to do some of the work about the store that he had previously been accustomed to do, he was able to supervise the business which continued to prosper. It seems readily apparent that from the significance which it attached to the assured's successful management of his business, notwithstanding his impaired health, this court was of the opinion that the circumstance of successful management was tantamount to the ability to do the greater portion or substantial part of his work.

In the instant case, however, plaintiff was in the employ of another and his regular occupation, within the meaning of the instant policy, is in our judgment to be tested by the extent of his usefulness to his employer. It is of no moment that plaintiff's health was such as to permit him to carry out a portion of his supervisory duties if in connection therewith he is unable to perform essential or necessary duties that make his supervision meaningful. As this court observed in *Cole, supra*, the right to benefits depends in part upon the occupation and the capabilities of the insured and also upon the circumstances of the particular case.

Furthermore, the particular circumstances of a given case involve not only the insured's physical or mental condition but the terms of the insurance contract by which the insurer obligates itself to pay the benefits sought. In *Pannone* as well as other cases to which defendant refers, the insurer limited its liability to such time as the insured was totally disabled so as to prevent him from engaging in any occupation or employment for wage or profit.

In the instant case defendant obligated itself to make monthly indemnity payments when plaintiff became totally disabled to engage in his regular occupation which not defined by the policy becomes the work that he was doing at the time of his injury.

We hold therefore that, the trial justice having exercised his independent judgment and in so doing neither overlooked nor misconceived material evidence, his decision should not be disturbed.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the superior court for further proceedings.

*Giovanni Folcarelli, John Quattrocchi, Jr.,* for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Thomas D. Gidley,* for defendant.