**Wendell F. COX, Appellant,**

v.

**WASHINGTON NATIONAL INSURANCE COMPANY, Respondent.**

**No. KCD 26946.**

Missouri Court of Appeals,
Kansas City District.

Dec. 30, 1974.

Motion for Rehearing and/or Transfer
Denied Jan. 28, 1975.

Application to Transfer Denied
April 14, 1975.

B. W. Jacob, Bagby, Benjamin & Arnold, Kansas City, for appellant.

William H. Curtis, Robert M. Kroenert, John W. Cowden, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

DIXON, Chief Judge.

Wendell F. Cox, appellant herein, brought suit for monthly disability payments from respondent, Washington National Insurance Company. The case was heard without a jury. Later, on August 22, 1973, the court entered a judgment finding the issues on all three counts of plaintiff's petition for the defendant. This is a direct and timely appeal from that judgment.

Defendant filed a motion to dismiss alleging that plaintiff's brief was violative of Rule 84.04(c) and (d), V.A.M.R. The motion was taken with the case and is now overruled. Plaintiff's brief is far from a model, but is not so blatantly violative as to require the harsh remedy of dismissal.

On December 6, 1946, an individual health and accident insurance policy was issued by defendant which provides benefits for total disability resulting from accidental injury or sickness.

The policy provides a monthly accident indemnity of $150 per month for a period not exceeding twenty-four (24) consecutive months if accidental injury " . . . shall wholly and continuously disable the Insured and prevent him from performing each and every duty pertaining to his occupation and cause total loss of time, . . .." The policy further provides:

"After the payment of the monthly indemnity for 24 consecutive months as aforesaid, the Company will thereafter pay at the rate of the Monthly Accident Indemnity for total accident disability so long as the Insured shall live and shall be wholly and continuously disabled and prevented from engaging in any occupation or employment."

The policy also provides a monthly sickness indemnity. That portion of the policy requires confinement indoors for recovery, and plaintiff admitted he was not so confined, and no further discussion of that portion of the coverage is required.

This disability policy was in effect on June 10, 1965, when plaintiff was involved in an automobile accident and received serious bodily injuries, including a gangrenous bowel caused by a seat belt worn at the time of the accident. At the time of the accident, plaintiff was employed as a traveling territorial salesman with the H. D. Lee Company. As a commissioned territorial salesman, he personally called on retail customers and sold clothing manufactured by Lee. At the time of the accident, plaintiff operated in an exclusive territory which included most of southwest Missouri and a portion of central Missouri. No other salesmen from the Lee Company were allowed to call on plaintiff's retail customers. Following the automobile accident, plaintiff was unable to work for approximately eight months. He filed a claim for disability benefits resulting from accidental injury and received $1,087 from

respondent for the period beginning June 10, 1965 and ending February 6, 1966.

In March, 1966, plaintiff resumed his duties as a full time traveling territorial salesman with the H. D. Lee Company, testifying as to an inability to begin working before noon because of a condition of constant diarrhea and difficulty in finding a proper diet while traveling. At that time he was responsible for covering a territory slightly different than he covered before the accident, with two counties being added to his territory and ten counties north of Highway 50 being deleted. Plaintiff again commenced his personal visits to retail store customers in southwest and central Missouri. There was evidence that his percentage of mail orders was high and that he had assistance from some customers in handling sample cases and other physical effort connected with his duties.

A salesman for a competitive company, who traveled the same territory and who occasionally had the plaintiff in his own home and occasionally stayed overnight in the same motel, said that plaintiff was unable to work a full day—"didn't put in many hours." An employee of H. D. Lee, who was in charge of the department handling mail and phone orders, testified to a larger volume of mail orders in plaintiff's territory and of receiving complaints from customers that they had not seen plaintiff and they wanted the company to "send him" or "ask him to come by" and service the account.

Upon his return to work, plaintiff worked in his territory from March, 1966 to November, 1968. Exhibits demonstrate that he lost time from his work on several occasions. Plaintiff was chided in writing by his supervisor for 23 days lost time as of November, 1967; and on the 1967 final report, he was complimented for his performance under "adverse conditions." Other communications from the company indicated they were aware of his physical difficulty and sympathetic to it, while at the same time "hoping" he could "elimi-nate" lost days, while at the same time adjuring plaintiff to "take care of your health."

Plaintiff said he worked the same number of hours on the road upon his return to work in March, 1966 as he worked before the accident, but complained that because of diarrhea he could not start calling on accounts until noon and had to work nights to catch up on paper work. During the period that he was back at work from March, 1966 until November, 1968, plaintiff made no claim for disability benefits and paid all premiums due under the disability policy in issue.

Following the automobile accident in June, 1965, plaintiff was given emergency treatment, transferred to a hospital and treated by Dr. James W. Clawson and other physicians for multiple injuries, broken limbs, facial fractures and a perforated small intestine which required removal of a portion of the small intestine, a portion of the large intestine and the ileocecal valve. Plaintiff saw Dr. Clawson for follow-up examination and treatment in January, 1966 when it was noted occasional diarrhea was being suffered. Plaintiff was not given a specific written diet but was advised to avoid foods that caused difficulty. He was given a prescription for a drug to control diarrhea and upon a subsequent visit, a new type of drug was prescribed. The occasional diarrhea noted in Dr. Clawson's records progressively worsened according to plaintiff's testimony and was later characterized in both claims forms and hospital records as chronic diarrhea. By 1969, plaintiff's hospital history reflected four to twelve stools per day, and the history notes that the diarrhea had persisted since the accident. Dr. Warres, a urologist who subsequently treated plaintiff, gave his opinion that the chronic diarrhea was caused by the surgical removal of a portion of the bowel necessitated by the injury received in the automobile accident. Dr. Warres had entered upon the treatment of plaintiff when a kidney stone attack occurred in November, 1968. At that time, a surgical proce-

dure was utilized to crush internally and remove a kidney stone. From that time until June, 1969, plaintiff underwent four surgical procedures for kidney stones, two open procedures on left and right kidneys and an additional closed procedure for removal of stones. The medical evidence is that plaintiff has become a chronic stone maker as a result of the constant diarrhea and that the diarrhea cannot be controlled within the stress of his occupation. Dr. Warres testified unequivocally as to the chain of causation and that plaintiff had been totally and continuously disabled since June of 1965. He further stated that plaintiff could not perform his duties under the symptoms present, "that in all probability he tried and in so trying he aggravated the situation." The urologist acknowledged error in telling the defendant the disability commenced in June of 1969, explaining that plaintiff's attempt to work had directly caused major open surgery and that had caused him to conclude the disability commenced with the auto accident and continued.

Dr. Clawson thought he had released plaintiff to return to work. Undeniably, plaintiff's employer had requested such a release. The doctor admitted he had advised such a return to work. When cross examined concerning this, the doctor stated that in the light of the plaintiff's subsequent difficulties, his advice was in error.

Plaintiff's sole substantive point on appeal assigns as error the trial court's judgment that he had not been wholly and continually disabled within the meaning of an insurance policy issued by the defendant. It appears from the plaintiff's argument that he has abandoned any claim under the sickness provisions, provisions which required a finding that plaintiff was confined indoors, it being admitted that he was not so confined. If plaintiff is to recover, it must be under the accident coverage.

The accident coverage requires a finding that plaintiff has been wholly and continuously disabled since the accident. The question on appeal is whether, under Missouri law, and these facts, the plaintiff was so disabled.

■ It is clear, and the defendant concedes, that the mere return to work after an accident does not preclude a finding that plaintiff was wholly and continuously disabled. Rogers v. Metropolitan Life Ins. Co., 122 S.W.2d 5 (Mo.App.1938); Wood v. Metropolitan Life Ins. Co., 161 S.W.2d 737 (Mo.App.1942). The resumption of work is a circumstance to be considered by the jury but as a matter of law does not preclude a finding of total disability. As was stated in the *Rogers* decision, the question of existence of total disability within the meaning of an insurance policy is ordinarily one of fact, and is not to be ruled against the employee as one of law if there is room in the case for the inference that his continuance on the job was only accomplished at the expense of great physical effort and with risk to health and life, when common care and prudence, under more fortuitous circumstances, would have dictated that he refrain from such activity. Moss v. Metropolitan Life Ins. Co., 230 Mo.App. 70, 84 S.W.2d 395 (1935); Sapaw v. Metropolitan Life Ins. Co., 94 S.W.2d 1082 (Mo.App.1936).

Thus, the return to work does not preclude plaintiff's claim. However, in those cases in which recovery was allowed a claimant who had resumed work, one of the following circumstances existed: (1) claimant, although resuming work, was unable to perform his duties of his occupation without the aid and assistance of his co-workers; or (2) claimant, although resuming work, did so only at the price of great pain and suffering and at the grave risk of endangering his health and life, or (3) claimant was unable to perform substantially all of the material acts necessary to the prosecution of his occupation. Glore v. Metropolitan Life Ins. Co., 153 S.W.2d 770 (Mo.App.1941); Tenkhoff v. New York Life Ins. Co., 191 S.W.2d 1005 (Mo.App.1946).

Thus, upon this record, the inquiry resolves itself into a determination of whether the evidence on the whole record relating to the three factors mentioned is such that the trial court's finding that the "plaintiff has not been continually disabled" can be sustained. As to the factor of aid and assistance, there is some indication the plaintiff received aid and assistance, but on the whole record considering the plaintiff's admissions, it must be conceded that on that factor alone the trial court's finding would not be clearly erroneous.

A closer question arises upon the issue of performing all the necessary tasks of his occupation. The company records indicate some dissatisfaction with his performance. Plaintiff himself testified in such a fashion and the tax records and employment records were such that, again, the trial court's finding cannot be held to be clearly erroneous.

As to the third and final issue, the question is more difficult. First, it should be noted that the evidence as to the plaintiff's return to work endangering his health, the evidence was all from doctors who testified by deposition and hospital records. In such circumstances, the appellate courts are as able to pass on the issue of credibility of witnesses testifying by deposition and the effect and meaning of written records as the trial court. Parks v. Thompson, 365 Mo. 700, 285 S.W.2d 687, 694 (Mo.1956).

■ That medical evidence showed not only that the plaintiff's disability had been continuous since the accident and also that his attempt to work was, in fact, causative of his later severe kidney difficulties. The exposure of plaintiff to two major abdominal surgeries as well as two internal surgical procedures certainly constitute a grave risk of endangering his health and life. Not only was it a risk, but the fact occurred. The plaintiff now has one non-functioning kidney.

On the basis of this analysis, it must be concluded that the trial court erred in finding that the plaintiff was not wholly and continuously disabled from performance of his occupation.

Plaintiff is, therefore, entitled to recover from the defendant the balance of the twenty-four months of payments at $150 per month provided in the first portion of the coverage provided by the policy. The respondent argues, however, that even if this court makes such a finding that the recovery of the plaintiff must be limited to the twenty-four months provided in the policy pointing to the provisions of the policy that provide that any recovery beyond the twenty-four month period must require proof that the plaintiff was unable to engage in "any occupation." The only evidence in this record with respect to the ability of the plaintiff to perform the duties of any occupation was the testimony on cross examination of Dr. Warres, and he very specifically testified that in his opinion the plaintiff was not disabled from performing any occupation and the plaintiff offered no proof to the contrary, nor in fact, any proof at all concerning his disability from engaging in any occupation. As respondent indicates, the term "any occupation" has been construed to include any occupation, business or calling which the insured's age, training, experience, education and physical condition would fit him for and would allow him to pursue. Heald v. Aetna Life Ins. Co. of Hartford, Conn., 340 Mo. 1143, 104 S.W.2d 379 (1937); Eden v. Metropolitan Life Ins. Co., 138 S.W.2d 745 (Mo.App.1940). Even under this broad definition approved in the Missouri case law, there is no proof in this record that would entitle the plaintiff to recover for disability benefits beyond the twenty-four months.

■ Respondent, relying upon the standard provisions of the contract, also claims that respondent has been prejudiced in the failure of the plaintiff to file any proofs of loss or notice of claim as required by

the policy. The basis for this claim of prejudice is testimony by the claims manager that if notice had been received of the plaintiff's intent to claim disability, the defendant could have made investigation with respect to the condition of health of the plaintiff and other investigation concerning his ability to pursue his occupation. In view of the entire record in this case, it is apparent that there is no such prejudice to the right of the defendant with respect to the twenty-four-month period of disability. They received full and complete information from all of the doctors involved in the treatment of the plaintiff; plaintiff himself testified with great frankness concerning his pursuit of his occupation and there does not appear to be any indication that prior notice to the defendant would have enabled them to have produced any other evidence than what was fully and carefully developed at the trial with respect to the condition of the plaintiff and his working subsequent to his initial claim. It is also true that the defendant received proofs of loss and notice of claim on the occasion of the subsequent hospitalization of the plaintiff and that these claims the defendant elected to treat as sickness claims, although they showed on their face the connection between the kidney disorder then involved and the original accident and claim. The contention of the defendant with respect to this point is denied.

■ The plaintiff's petition also requested damages for vexatious delay and attorney's fees, and the defendant asserts that such damages and attorney's fees are not properly allowable in this cause under Section 375.420 RSMo 1969, V.A.M.S. The defendant's position in this regard is sound. It is well settled that where there is an open question of fact or law determinative of the insurer's liability, the insurer, acting in good faith, may insist on a judicial determination of such questions without being penalized therefor. Rohlfing v. State Farm Fire and Casualty Company, 349 S.W.2d 472 (Mo.App.1961); Cohen v. Metropolitan Life Insurance Company, 444

S.W.2d 498, 506 (Mo.App.1969). Under that rule and the admitted factual dispute on this record concerning the question of the plaintiff's exposure to serious danger and risk to health in returning to work, no damages for vexatious refusal nor attorney's fees should be permitted. The judgment of the trial court is affirmed, except as to the plaintiff's claim for disability for a period of twenty-four months following his 1965 accident, and the cause is reversed to the trial court with directions to enter a judgment for the plaintiff for the balance of the payments due to him of $150 a month for a twenty-four-month period.

All concur.