**Charles K. HOPKINS,
Plaintiff-Respondent-Appellant,**

v.

**NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,
Defendant-Appellant-Respondent.**

**Nos. 10940, 10947.**

Missouri Court of Appeals,
Southern District,
En Banc.

Jan. 14, 1980.

Motion for Rehearing and for Transfer Denied Feb. 6, 1980.

Harold L. Henry, Henry, Henry & Henry, West Plains, for plaintiff-respondent-appellant.

Kenneth A. Wagoner, Moore & Brill, West Plains, for defendant-appellant-respondent.

MAUS, Judge.

By his petition the plaintiff sought a judgment for accrued monthly installments allegedly due under a disability insurance policy, interest, a statutory penalty for vexatious delay and attorney's fees. The jury returned a verdict in favor of the plaintiff for all items for which recovery was sought. Upon hearing the defendant's motion for a new trial, the circuit court sustained the defendant's motion for a directed verdict filed at the close of all the evidence as to the recovery of the penalty, attorney's fees and interest and entered a judgment for the defendant for those items. As to all other matters, the motion for a new trial was overruled. Each party appealed. Since submission the appeals have been consolidated for decision and opinion. The defendant's first point is that the plaintiff did not make a submissible case that he was totally disabled from engaging in his "regular occupation". This point is based upon the assertion that at the time of disability the plaintiff's regular occupation was not, as he contended, as an over-the-road truck driver, but supervising his A & W franchise and farming and that he was not disabled from either of those occupations. A review of the evidence is required.

The policy was issued March 17, 1971. It basically provided that during a period of total disability the defendant would pay the designated monthly indemnity. In the definition section of the policy, as amended by a rider, total disability was defined:

" 'Total Disability' means the complete inability of the Insured due to injury or sickness to engage in *his regular occupation* until Monthly Indemnity has been payable under the policy during any period of disability for 84 months or for the period for which Monthly Indemnity is payable, if less. After Monthly Indemnity has been payable under the policy during any period of disability due to injury

or sickness for 84 months, then during the remainder, if any, of the period for which Monthly Indemnity is payable, 'total disability' means the complete inability of the Insured due to injury or sickness, as the case may be, to engage in any and every gainful occupation for which he is reasonably fitted by education, training or experience, with due regard to prior economic status."

Significantly, the only change made by the rider from the policy as originally printed was to change the words "his occupation" to "his regular occupation".

In general the policy is guaranteed renewable at the stipulated premium to age 65 years. It provides that after the age of 65 years "so long as the insured is actively engaged in a full-time occupation" the insured may continue the policy in force by paying the premiums at the rates then in force. In reference to recurrence of total disability, the policy provides if there is a recurrence of total disability from the same or related cause, the second period will be deemed continuous with the first, "unless between the two periods the insured has performed all the duties of a gainful occupation on a full-time basis for at least six consecutive months." There is no provision prohibiting or providing a different premium upon a change of occupation. In the application, which is made a part of the policy, plaintiff's occupation is given as "long-haul truck driver" and his employer as Gordon's Trans. Co.

The plaintiff was born May 28, 1928. He commenced driving a truck on July 5, 1953. He worked as "an over-the-road" driver for several companies, and for Gordon's Transport of Memphis, Tennessee, from April 7, 1959, to the time in question. The plaintiff was a native of the West Plains area. He moved back to that area in 1973, although he kept a house trailer in Memphis. While it is not entirely clear, he apparently moved the house trailer to the West Plains area sometime shortly before June, 1976. He had owned a farm in that area since about 1966 and ran some cattle on that farm.

About May 28, 1976, the plaintiff took a vacation which was to end June 12, 1976. During that time he was suffering from gout, and he was, as he said, "run down and overworked." About June 12, he called Claude Wallace Bond, Director of Line Drivers for Gordon's and told him that he was going to take some sick leave and after three weeks or three months or whatever time it would take he would come down and either resign or go to work. In the meantime, on June 2, 1976, the plaintiff purchased the A & W franchise in West Plains, as he put it, "for my son to run." The son had been recently discharged from the service. The plans were that the son would operate and manage the business, his wife would keep the books and the plaintiff and his wife would own the business. He intended to continue driving for the next two years so that at the age of 50 he could have taken early retirement. There was evidence that he intended to seek work in driving in the West Plains area. The plaintiff repeatedly testified that he did not then intend to quit driving and that his "main line of business" and his "regular occupation" was truck driving. However, commencing June 2 and continuing until its sale in 1977, the plaintiff did on a daily basis supervise the son's management of the franchise.

In late August or September, 1976, something suddenly happened to his right eye. It got worse and reached the place where he could hardly see, everything was distorted. He consulted an optometrist and physician in West Plains. The latter referred him to an ophthalmologist in Springfield, who examined the plaintiff on October 16 and again on October 28, 1976. His diagnosis was that from an unknown etiology the plaintiff had suffered an occlusion of a vein in the retina of the right eye, resulting in vision in that eye of 20/400 according to the Snellen Visual Acuity Chart. This was approximately a 96.7% loss of vision in that eye. It is a permanent, untreatable uncorrectable condition. The ophthalmologist in his deposition stated that the plaintiff would not be totally disabled from engaging in owning and supervising an A & W

franchise and farming; he would be totally disabled from a job which required him to have at least 20/40 vision in both eyes.

The plaintiff testified that as a result of the loss of vision he could no longer meet the physical requirements as a truck driver as required by his company. The circuit court took judicial notice of The Federal Motor Carrier Safety Regulations which includes a requirement that a driver must have "distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses".

The deposition of Bond, taken upon the instance of the defendant, was offered in evidence by the defendant. Bond testified concerning the employment history of the plaintiff. He confirmed the vacation scheduled to end June 12, 1976. He also stated that on or about June 12, 1976, the plaintiff called and said that he was going to take three weeks sick leave and would then be down to resign. When he did not do so, Bond tried to locate the plaintiff by telephone at Mammoth Springs, where the plaintiff said he would be located. After such attempts were unsuccessful, on October 11, 1976, Bond determined to terminate the plaintiff and wrote him a letter. This letter recited Bond's version of the telephone conversation of June 12, 1976, and stated that Gordon's "is accepting your resignation given to me over the phone in June of 1976 and your name is being removed from the seniority list effective this date." Plaintiff's name was removed from the board on October 11, 1976. Bond could not recall any conversations with the plaintiff other than the one he related on June 12.

The plaintiff had, on re-direct, produced telephone bills which he stated showed calls to Gordon's on July 19, October 19 and November 3, 1976. He did not directly identify the subject matter of the July 19 call, but apparently it was to give Bond a current address and phone number. The October 19, 1976, call was made the day plaintiff received Bond's letter and plaintiff told Bond about his eye condition and that he would give him a report just as soon as he made the second visit. On November 3, he apparently told Bond that his condition was permanent and he could never pass an ICC physical again, although this was excluded by the circuit court.

Cases dealing with recovery upon disability insurance policies are legion. Because of the differences in terminology of the insuring clauses declaring the disability insured against, the cases are difficult to categorize for the purpose of precedent. See 21 A.L. R.3d 1155. However, there are two well-defined categories of insuring clauses which are sufficient to recognize for the decision of this case. 44 Am.Jur.2d, Insurance, § 1607. The first is a general disability clause which essentially insures against disability to engage in any occupation. Generally speaking there are three views concerning the construction of such a clause. 44 Am.Jur.2d, Insurance, § 1609. The intermediate view, apparently adopted by Missouri, is that the test for recovery is the inability of the insured "to perform, in the usual and customary way, substantially all of the material acts of any occupation which his age, training, experience, education and physical condition would fit him for except for the infirmity." *Stout v. Central National Life Insurance Company,* 522 S.W.2d 124, 129 (Mo.App.1975), which contains an excellent review of the cases.[1] The second category is the occupational disability clause which insures against disability to engage in a particular occupation. The test for recovery under such a clause is generally declared to be "inability to do all the substantial and material acts necessary to perform the insured's occupation in the usual way." *Montgomery v. Travelers Protective Ass'n of America,* 434 S.W.2d 17, 23

---

1. But see *Stoner v. New York Life Ins. Co.,* 90 S.W.2d 784 (Mo.App.1936) in which in dealing with such a clause the court said: "The occupation in which plaintiff was insured is the occupation which plaintiff was following at the time that the policies were issued and at the time that he was injured and became disabled." p. 796.

(Mo.App.1968).[2] By the definition of "total disability" the policy in question for the first 84 months provides coverage under an occupational disability clause and thereafter under a general disability clause.[3] The occupational disability clause is applicable in this case.

■ An occupational disability policy may expressly designate the particular occupation which is to be considered. *James v. United States Casualty Co.*, 113 Mo.App. 622, 88 S.W. 125 (1905). Or, such a policy may by implication by provisions such as those requiring notification of a change in occupation and providing for a possible premium differential cause the term "his occupation" to mean the occupation listed in the policy or one to which it is changed upon notice to the company. *Continental Casualty Co. v. Wagner*, 195 F.2d 936 (8th Cir. 1952). However, the designation of an occupation in the application, even though incorporated in the policy, does not per se cause that occupation to be the designated occupation. *Prudential Ins. Co. of America v. Rains*, 281 Ky. 506, 136 S.W.2d 792 (1940). That is true of the policy in question. However, by the use of the terms "his occupation", "his regular occupation" or the like such policies are held to refer to some particular occupation and not just any occupation. Such terminology is generally held to mean the insured's occupation at the time the disability occurs. 1A Appleman Insurance Law & Practice, § 671, p. 600.

■ The defendant seizes upon this proposition and argues that at the time of plaintiff's disability, his regular occupation was farming and supervising the A & W franchise and that since he was not disabled from performing those pursuits he may not recover. On the other hand, the plaintiff contends his regular occupation was yet as an over-the-road driver, which occupation he cannot pursue. Defendant's argument does not consider that an insured may have more than one activity he pursues for gain and the activity at the time of disability is not necessarily his regular occupation or even his occupation.[4] The meaning of the term occupation may vary according to the purpose of the policy, the context in which it is used and the circumstances.[5] The policy in question uses the terms "his regular occupation", "a full-time occupation" and "gainful occupation" but defines none of them. The term "occupation" may be defined as "the principal business of one's life: a craft, trade, profession or other means of earning a living". Webster's Third New International Dictionary. This definition in itself by the word "principal" indicates one may have more than one activity pursued for money. The term "regular" may be defined as "steady or uniform in course, practice or occurrence: not subject to unexplained or irrational variation: steadily pursued." Webster's Third New International Dictionary. It is significant

2. Where a policy provided a monthly indemnity if accidental injury "shall wholly and continuously disable the Insured and prevent him from performing each and every duty pertaining to his occupation and cause total loss of time" the test applicable where the insured has returned to work is discussed in *Cox v. Washington National Insurance Company*, 520 S.W.2d 76, 77 (Mo.App.1974).

3. The two types of clauses were applied in *Cox,* supra, n. 2. Also see *Ohrel v. Continental Casualty Company,* 138 N.J.Super. 170, 350 A.2d 310 (1975).

4. Compare *Scharbach v. Continental Casualty Company,* 83 Idaho 589, 366 P.2d 826, 829 (1961) in which the insured who had driven an oil truck for 12 years, started in the dairy business and some general farming and reduced his driving. Recovery was permitted

because of disability from engaging in dairying. In that case the court observed: "It is common knowledge that a person sometimes engages in two or more employments or businesses during a working period to provide a livelihood and it must be presumed that such fact was known to appellant."

5. The term "regular occupation" as used in a blanket policy has been construed to include activity in a volunteer fire department for which the insured previously disabled from his former work as a carpenter received no compensation. *Ohrel,* supra, n. 3. The term occupation may bear a different connotation when used in an accident policy provision for diminution of indemnity where an insured engages in, or does an act pertaining to, a more hazardous occupation. See Annot. 8 A.L.R.2d 481 (1949).

the term "regular" was added to "occupation" in the policy definition of total disability by rider. This in itself is a clear recognition that an insured may have more than one activity pursued for gain.

There can be no question that until the purchase of the franchise the plaintiff's principal business of life, steadily pursued, his regular occupation, was that of an over-the-road driver. This is true even though he was also running some cattle on his farm. That was not necessarily changed upon the purchase of the franchise. An insured with more than one activity may change his principal pursuit from one activity to another. But, such a change is not conclusively established by the mere cessation of the activity of the principal pursuit. Such cessation may be of a temporary nature because of illness or to engage in an activity which is to be less than a substitute for the principal activity. On the other hand, the absence of such a change is not to be conclusively determined by a declared contrary intent of the insured. Generally, the question of a change, a determination of regular occupation, is to be made by the jury from all the facts and circumstances.

The defendant relies upon *Colaluca v. Monarch Life Insurance Company,* 101 R.I. 636, 226 A.2d 405 (1967) in which the term "regular occupation" was declared to mean the regular occupation at the time of disability. However, that case does not aid the defendant for that insured had clearly terminated his self-employment and become employed by another. A change in occupation was demonstrated in *New York Life Ins. Co. v. Saunders,* 314 Ky. 577, 236 S.W.2d 692 (1951) in which the insured had simultaneously engaged in the grocery business and automobile business, but at the time of disability had terminated the grocery business, leased the building, and continued in the automobile business for which he was not disabled. This case is similar to *Benefit Ass'n of Railway Employees v. Secrest,* 239 Ky. 400, 39 S.W.2d 682 (1931), in which the insured railroad employee who had sold insurance on the side, was on leave

of absence for illness and entered into a contract to sell insurance for another company before the disability occurred. In that case the court made the following appropriate observations. "Under the general definition, 'occupation' means one's regular business or employment. One has a regular occupation, though he may be temporarily out of its pursuit and engage in another business, yet properly give his regular occupation as his true occupation." *Benefit Ass'n of Railway Employees v. Secrest,* supra, a p. 685. "One may pursue his chief occupation and as a side line carry on another without abandonment of his chief occupation." *Benefit Ass'n of Railway Employees v. Secrest,* supra, at p. 685.

This case was presented as if the plaintiff's right to recover was conclusively determined by whether or not Bond could properly accept plaintiff's resignation from employment by Gordon's as of June, 1976. There was evidence from which the jury could conclude the plaintiff had not tendered his resignation and was still "on the board" on sick leave with Gordon's when the disability occurred in August or September, 1976. However, even if the resignation was effective in June, 1976, that is not conclusive. The insured testified he intended to continue driving. Had it not been for the disability, that could have continued to be his principal pursuit with Gordon's or otherwise. For the purpose of this point, the evidence must be considered in the light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable, reasonable, inferences therefrom. *Stout v. Central National Life Insurance Company,* supra. Whether or not the insured's principal business of life as an over-the-road driver, steadily pursued for 23 years, had been changed was for the jury to determine. The plaintiff made a submissible case of total disability from engaging in his regular occupation.

The defendant's other point concerns a portion of plaintiff's rebuttal argument. In referring to the deposition testimony of Director of Line Drivers Bond, Plaintiff's counsel said, "I wish they'd brought Mister

What-You-Call-Him up here from Gordon. I'd like to put him on the stand here." Defense counsel interrupted with "your honor". Plaintiff's counsel then asked the jury if they thought the plaintiff way lying about the phone calls. Defense counsel answered that he did and then stated it was improper for counsel to make reference to Bond not being present in person. The court stated it would permit the argument. Plaintiff's counsel then argued the plaintiff was telling the truth concerning his phone calls to Bond. All of this was preceded by defense counsel's argument referring to what he termed plaintiff's "presto testimony" concerning his additional phone calls to Bond. He then argued Bond's testimony that Hopkins voluntarily quit by the first call and there were no others. He went on: "But, you know what, the plaintiffs are not slow. They're not slow. Mr. Hopkins is quick on his feet. And they realized that we've already gone down to Memphis and we've taken the deposition of the Gordon Transport boss down there, Mr. Bond, and he can't be here today, apart from his deposition." He continued with an argument that the plaintiff changed his testimony to pursue his interest in the lawsuit.

 One party may not argue the failure of another party to call a witness equally available to the parties. *Bean v. Riddle,* 423 S.W.2d 709 (Mo.1968). In some circumstances the questioned argument might be construed to fall in the forbidden area. But, that argument must be considered in context. The defendant had clearly charged that because of the deposition plaintiff had lied. His repeated use of the plural could be construed as improper argument involving opposing counsel. *Critcher v. Rudy Fick, Inc.,* 315 S.W.2d 421 (Mo.1958); *Redick v. M. B. Thomas Auto Sales,* 364 Mo. 1174, 273 S.W.2d 288 (1954). He attempted to bolster his argument by reference to Bond's inability to be present in person. The interpretation given plaintiff's argument by the circuit court is to be considered. *Cash v. Bolle,* 423 S.W.2d 743 (Mo. banc 1968); *St. Louis County v. Szombathy,* 497 S.W.2d 144 (Mo.1973). Under the circumstances the argument in the con-

text made could have been reasonably construed as retaliatory argument on the issue of credibility and the circuit court did not err in permitting the argument. *Graeff v. Baptist Temple of Springfield,* 576 S.W.2d 291 (Mo. banc 1978).

 As appellant the plaintiff complains of the action of the circuit court, upon hearing defendant's motion for a new trial, sustaining the defendant's motion for a directed verdict as to the statutory penalty, attorney's fees and interest. Irrespective of whether or not plaintiff's "point relied upon" meets the requirements of Rule 84.04(d) V.A.M.R., it is apparent this action was erroneous for a reason which requires this court to take cognizance of that error. Generally speaking, in a jury tried case the only authorized after trial motions are a motion for new trial, Rule 78.07 V.A.M.R. and a motion for judgment notwithstanding the verdict, Rule 72.01(b) V.A.M.R. *Elmore v. Whorton,* 581 S.W.2d 950 (Mo.App.1979); *Milner v. Texas Discount Gas Co.,* 559 S.W.2d 547 (Mo.App. 1977). The defendant did not file a motion for judgment notwithstanding the verdict. The motion filed is entitled "Motion for New Trial" and the only relief prayed for is a new trial. It may not be construed as a motion for judgment notwithstanding the verdict. The action of the circuit court was more than 30 days after the initial entry of the judgment. "The power of a court to correct, amend, vacate, reopen or modify a judgment upon its own motion (and for good cause) is limited to thirty days after entry of the judgment. . . . After that thirty-day period the court's jurisdiction is limited to granting relief sought by one of the parties in its after trial motions for reasons stated in that motion." *Wiseman v. Lehmann,* 464 S.W.2d 539, 543 (Mo. App.1971). The action of the circuit court was void. *Stein v. McDonald,* 394 S.W.2d 297 (Mo.1965); *State ex rel. Chemical Dynamics, Inc. v. Luten,* 581 S.W.2d 921 (Mo. App.1979); *Wiseman v. Lehmann, supra.*

 Yet the defendant did preserve the issue of the sufficiency of the evidence

to support the submission of the statutory penalty and attorney's fees by assignment of error in its motion for new trial. *Teichman v. Potashnick Construction, Inc.,* 446 S.W.2d 393 (Mo. banc 1969); *Frisella v. Reserve Life Ins. Co. of Dallas,* 583 S.W.2d 728 (Mo.App.1979); *Fallert Tool & Engineering Co. v. McClain,* 579 S.W.2d 751 (Mo. App.1979); *Welch v. Hesston Corp.,* 540 S.W.2d 127 (Mo.App.1976). The fact the plaintiff received a verdict based on vexatious delay is not conclusive on that issue and an examination of the evidence is required. "[W]here there is an open question of fact or law determinative of the insurer's liability, the insurer, acting in good faith, may insist on a judicial determination of such questions without being penalized therefor." *Cox v. Washington National Insurance Company,* 520 S.W.2d 76, 81 (Mo. App.1974). To justify the submission of vexatious delay there must be evidence that the "refusal to pay . . . was wilful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial." *Groves v. State Farm Mut. Ins. Co.,* 540 S.W.2d 39, 42 (Mo. banc 1976). The burden of producing such evidence was upon the plaintiff. *Hay v. Utica Mut. Ins. Co.,* 551 S.W.2d 954 (Mo. App.1977). The plaintiff did not meet that burden. The evidence affirmatively established there was an open question on the issue of regular occupation. In addition, the only medical information shown to have been submitted to the defendant was a questionnaire answered by the plaintiff's doctor, who knew the plaintiff was a driver. That report, while couched in "insurance" language indicated the plaintiff had not been required to cease his normal work activities. The circuit court correctly determined the issue of vexatious delay should not have been submitted to the jury.

However, because of the action of the circuit court the defendant was in a position in which it could not be expected to seek in this court an order granting a new trial on that basis. Yet, under the circumstances, a judgment not supported by the evidence should not stand. "If plaintiff made a submissible case it would be a plain error af-fecting substantial rights and a manifest injustice for the court to direct a verdict against plaintiff (just as it would be plain error and manifest injustice to permit a judgment for plaintiff to stand where plaintiff had failed to make a case, as pointed out in *Millar v. Berg,* Mo., 316 S.W.2d 499, loc. cit. 502, 503)." *Williams v. Southern Pacific Railroad Co.,* 338 S.W.2d 882, 884 (Mo.1960). This court could grant a new trial because of such erroneous submission. If that was done, because a new trial upon the issue of vexatious delay would be so interrelated with the issue of recovery of the indemnity, the court would be impelled to grant a new trial on all issues. *Comegys v. Chrysler Credit Corp.,* 577 S.W.2d 873 (Mo.App.1979); *Owens v. Automobile Recovery Bureau, Inc.,* 544 S.W.2d 26 (Mo. App.1976). But, the plaintiff should not be required to relitigate the issue of indemnity. There is no indication additional evidence could be produced to support the claim of vexatious delay.

"Unless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14 V.A.M.R. In the posture in which this case has reached this court it is particularly appropriate that this be done under the plain error rule (Rule 84.13 V.A. M.R.), see *Wiseman v. Lehmann,* supra, 464 S.W.2d 539, ordering "such judgment as the court ought to give." Rule 84.14 V.A.M.R. The judgment entered February 8, 1977, is vacated. The judgment of November 22, 1977, is reversed as to the penalty and attorney's fees and is affirmed as to recovery under the policy and interest.

FLANIGAN, C. J., and TITUS, GREENE and PREWITT, JJ., concur.

BILLINGS and HOGAN, JJ., recused.